**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| INTELAGENTS, INC. d/b/a | ) |
| IA INFRAEGIS, | ) |
|       Plaintiff, | ) |
| | ) |
|       v. | )    No. 06 C 0606 |
| | ) |
| PATTON BOGGS LLP, MARIO V. | ) |
| MIRABELLI, LLOYD H. SPENCER, and | ) |
| JONATHAN C. PAVONY, | ) |
| | ) |
|       Defendants. | ) |

## MEMORANDUM OPINION

Before the court is defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, defendants' motion is denied.

## BACKGROUND

The following relevant facts, drawn from the First Amended Complaint, are taken as true for purposes of this motion. Plaintiff Intelagents, Inc., currently operating under the name IA InfrAegis (hereinafter "IA"), is a privately held Delaware corporation with a principal place of business in Elk Grove Village, Illinois. IA develops safety and anti-terrorism detection, prevention, deterrent, counter-measure, monitoring and remedial devices, programs and systems.

Patton Boggs LLP is a law partnership with a principal place

of business in Washington, D.C. and with offices in Virginia, Texas, Colorado, Alaska, and Qatar. Mario V. Mirabelli ("Mirabelli") is a partner at Patton Boggs whose law practice focuses on a variety of areas including public and private corporate finance and mergers and acquisitions. Lloyd H. Spencer ("Spencer") is also a partner at Patton Boggs whose practice focuses on assisting clients in the negotiation and closing of tender offers, mergers and acquisitions, stock purchases and asset acquisitions. Jonathan C. Pavony ("Pavony") is an associate at Patton Boggs whose practice focuses on corporate and securities matters, including public offerings, private placements, merger and acquisition transactions, stock and asset purchase transactions, joint ventures and corporate governance practices.

This suit arises in connection with legal services provided by defendants to IA in 2003. In early 2003, Gregory E. Webb ("Webb"), an inventor and entrepreneur, was working with a company called CityMainStreet Technologies, Inc. ("CityMainStreet"). On February 4, 2003, Patton Boggs contracted with CityMainStreet, through Webb, to provide legal services in connection with various matters. Prior to the creation of IA, Webb retained the services of Patton Boggs to assist him in establishing the corporate structure for his various budding businesses. The terms and conditions of the initial agreement between CityMainStreet and Patton Boggs applied to all legal services provided by Patton Boggs to IA and its

affiliated companies subsequent to execution of the agreement.
CityMainStreet subsequently changed its name to NextWeb
Technologies, Inc. ("NextWeb"). NextWeb was formed as an incubator
corporation, designed to further form and fund affiliated
corporations such as IA, to develop products based upon proprietary
technologies. In April 2001, IA was formed as a Delaware
corporation.

Under the agreement between Patton Boggs and NextWeb,
defendants were to develop and implement the corporate structures
of the entities, draft the Private Placement Memorandum of IA
("PPM)"), implement name changes, register IA trademarks and
patents, insure statutory and regulatory compliance, draft the
minutes of the meetings of the Board of Directors, present company
products to governmental agencies at which Patton Boggs claimed to
have connections, help find investors to raise sufficient funds to
produce and market products, and to otherwise provide competent
legal advice, counseling and services.

From the inception of the agreement until sometime in late
2003, Patton Boggs provided legal services to IA, as well as
CityMainStreet and NextWeb, including drafting corporate minutes
and memoranda and preparing corporate filings. Patton Boggs,
through Mirabelli, Spencer and Pavony, designed, recommended and
implemented the corporate structures of CityMainStreet and IA, as
reflected in the companies' by-laws. They also drafted the IA PPM,

which was an essential element in the structuring and procurement of capital investments necessary to the survival of IA. Patton Boggs, through Mirabelli, Spencer and Pavony, filed documents with the SEC and other regulatory agencies, participated in negotiations with investors, drafted corporate minutes, provided patent and trademark services and gave legal advice regarding the sale, distribution, optioning and vesting of IA stock. Patton Boggs billed in excess of $500,000 for the legal services provided by Mirabelli, Spencer, and Pavony, among others, over the course of an eight month period in 2003.

Throughout the spring of 2003, IA began to develop in form and stature. The by-laws were adopted, corporate officers were appointed, negotiations with potential investors were occurring and contractual relationships were being formed. Around early June 2003, URBS, Inc. and Carroll & Sain were retained to assist IA in its fundraising efforts. In addition, IA entered into teaming agreements with Security Information Systems, Inc. and Meteorological Equipment Services, Inc. to develop new technologies. IA also engaged in a working contract with the University of Chicago as the operator of Argonne National Laboratory for the mutual development of new technologies.

On August 5, 2003, Mirabelli and Spencer were in the Chicago/Cook County area to prepare the agenda for the next day's meeting of the IA Board of Directors. Mirabelli and Spencer

presented this agenda at the Meeting of the Board on August 6, 2003. At this meeting, Webb appointed Spencer acting Secretary for the purpose of taking the minutes of the meeting.

After the Board of Directors meeting, Spencer prepared draft minutes ("Spencer minutes"). It was later discovered that these draft minutes were not true and accurate reflections of what had transpired at the meeting. Among other things, the Spencer minutes were not consistent with the written agenda that Mirabelli and Spencer had presented to the Board at the beginning of the meeting. In addition, the Spencer minutes did not contain the resolutions adopted at the meeting. Several of the omitted resolutions related to the offering of the securities of the company. Finally, the Spencer minutes contained references to matters which were never discussed at the Board meeting, including the following:

a.      listing Webb's stock holdings in IA as 3.5 million shares fewer than he actually held;

b.      authorizing the Chief Financial Officer, Samuel Swisher, to issue stock in violation of the IA by-laws;

c.      omitting an indication that CityMainStreet intended to reinvest further in IA;

d.      falsely identifying Chuck Perkins as an Executive Officer of IA;

e.      allowing for payment of executive salaries, contrary to the direction of the Board and prior to IA obtaining adequate financing to do so;

f.      allowing the authorization of restricted stock without subjecting the issuance to a vote of the stock holders, contrary to the IA by-laws that defendants drafted;

g.      listing unauthorized individuals to receive restricted stock grants;

h.      allowing restricted stock grants to vest, in full or in part, immediately, as opposed to vesting after a year;

I.      allowing individual officers, acting alone, to enter into contracts on behalf of IA; and

j.      failing to include critical agenda items, including provisions necessary to secure certain investments.

It was later uncovered that the Spencer minutes were drafted in such a way as to permit IA stock to be obtained in a manner not intended by the majority of the Board. An adoption of the Spencer minutes would have enabled a hostile takeover of IA from Webb's control, contrary to the intent and actions of the Board.

Had the Spencer minutes been ratified, Webb's number of shares would have been reduced and a subscription plan would have been initiated whereby Mirabelli, Spencer, Pavony and other Patton Boggs attorneys would have obtained stock in IA at one-tenth of a cent per share. This is contrary to the subscription plan contained in the PPM prepared and drafted by defendants. Operating under the assumption that the Spencer minutes would be approved, the Patton Boggs attorneys circulated a stock subscription plan and even drafted checks for the purchase of their shares at the reduced rate not approved by the Board. Mirabelli drafted and submitted a check for $2,000, in an attempt to acquire 2,000,000 shares of IA stock. Spencer drafted and submitted a check for $250, in an attempt to acquire 250,000 shares of IA stock. Pavony drafted and submitted

a check for $100, in an attempt to acquire 100,000 shares of IA stock.

Simultaneously with their attempt to acquire shares of stock at reduced value, the Patton Boggs attorneys were coercing Webb and the Board into a relationship with Jessup & Lamont under the guise of obtaining short-term financing for IA, which would have led to a short term benefit to the attorney defendants. On September 11, 2003, before the fraudulent minutes had been discovered, a meeting was held between IA executives, Jessup & Lamont and Mirabelli (who participated by phone). During the conference call, William Schereck, IA's Chief Operating Officer at that time, asserted that IA needed five million dollars in immediate short term financing. This assertion had no basis in fact. Mirabelli supported the recommendation, and encouraged Webb to accept a "financing offer" from a shell corporation operated by Sandy Petrocelli. The acceptance of this offer would have resulted in a short term gain to the attorney defendants, but would have divested Webb of control of IA contrary to the intent of the Board of Directors.

At the request of Mirabelli, Sam Swisher attended the September 2003 planning meeting of the Board of CityMainStreet and NextWeb, where he attempted to obtain Webb's signature authorizing a stock subscription plan devised by Patton Boggs and its attorneys. The plan would have allowed for the immediate vesting of stocks which were not scheduled to vest for another year.

Swisher, at the instigation of Patton Boggs, also sent out a stock offer letter to IA employees purporting to offer them immediately vesting stock options. Subsequent to these unsuccessful attempts at gaining control, Mirabelli insisted that Webb give Swisher the authority to immediately issue stock certificates to the shareholders of IA, including the defendants, which would have been in violation of IA by-laws.

When the misrepresentations and omissions of the Spencer minutes were eventually discovered, the Board conducted a series of emergency meetings by telephone, and Webb solicited the advice and involvement of Senator Howard Carroll ("Senator Carroll"). Senator Carroll acted as Secretary during the telephone Board meeting regarding the Spencer minutes, and redrafted the minutes in accordance with what was discussed during the meeting and in line with the agenda. The Carroll minutes were prepared, circulated and ratified by the Board.

After the minutes were ratified, Senator Carroll began a further review of the acts of defendants. Independent auditors also were retained to examine the work performed by defendants, and the billing practices of Patton Boggs. It was not until after Senator Carroll and the auditors had conducted their investigations, in the spring of 2004, that IA discovered the injuries resulting from the defendants' malfeasances.

IA also alleges that the PPM was inadequate in at least two

material respects: (a) it failed to explain the corporate structure of IA, making no mention of its incubator/holding company CityMainStreet/NexWeb; and (b) it failed to explain to prospective investors that the acquisition of a share in NextWeb for $1.00 would entitle the shareholder to one share of IA and an option to purchase a second share of IA stock at one-tenth of a cent. IA alleges that the PPM, along with the regulatory filings and trademark registration efforts of defendants, were woefully inadequate, forcing it to spend valuable resources curing these defects, and diverting energy, resources, and efforts away from the pursuit of potential investors and other business opportunities.

IA further alleges that defendants deterred financial investment in IA. In December 2003, Patton Boggs and Mirabelli were contacted by Tom Parker, President of Thoroughbred Investments, on behalf of his client, Vern Gash. Gash had expressed an interest in making an investment in IA. However, Patton Boggs, through Mirabelli, discouraged his investment by making misleading statements concerning outstanding bills of IA and by not providing him with information he requested, even though it was readily accessible to Mirabelli. IA also alleges that defendants deterred others from investing in IA, and that but for the acts and omissions of Patton Boggs, through its attorneys, various individuals and entities would have invested millions of dollars in IA.

IA also alleges that Patton Boggs overbilled for legal services. Patton Boggs billed IA and its affiliates $591,298. In response to these bills, IA retained the independent auditors Oppenheim & Ostrick to review the bills and billing practices of Patton Boggs. Oppenheim & Ostrick highlighted numerous billing irregularities and opined that it was difficult to believe that such a large amount of money was billed for the rudimentary tasks which Patton Boggs performed. Oppenheim & Ostrick found that the work performed by Patton Boggs was grossly inadequate, incomplete, and that the billing was excessive.

IA filed suit against defendants in Illinois state court and defendants removed the case to this court. In response to a motion to dismiss, IA filed its First Amended Complaint, which asserts two counts. Count I is for professional negligence, alleging that defendants "placed their own interests above the interests of IA and acted without due care and loyalty, in breach of their fiduciary duties to IA." The following acts and omissions are alleged:

the drafting of a PPM containing material omissions;

the drafting of corporate minutes containing material misstatements and omissions;

allowing or creating errors and omissions in the filings of IA with the SEC and state regulatory agencies;

over-billing IA for services;

attempting to self-deal by acquiring IA stock by means not authorized by the company's by-laws;

negligently performing patent and trademark work;

failing to advise the Board of Directors of the defects in various IA corporate documents, including the PPM;

deterring investors from contributing capital;

participating in an effort to divest the leadership of IA of control, which might have provided defendants with short term gain, but was contrary to the best interests of the company and was not endorsed or approved by the Board of Directors; and

undermining the operations of IA in order to misappropriate its assets, technology and business opportunities for their own personal gain.

IA claims that as a direct and proximate result of defendants' breach of their fiduciary duties, IA sustained several kinds of damages, including but not limited to legal and professional fees from various firms and lost investment opportunities.

Count II is brought in the alternative, and asserts a claim of breach of contract against Patton Boggs. IA asserts that Patton Boggs breached its express and implied obligations under the contract through the following acts or omissions; failing to act as competent and skillful attorneys, failing to act in the best interests of IA, and over-billing IA for services.

Defendants now move to dismiss both counts of the First Amended Complaint.


## DISCUSSION

### A.  Motion to Dismiss Pursuant to Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion to dismiss is to test

the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 354 (3d ed. 2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. <u>Hentosh v. Herman M. Finch Univ. of Health Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999); <u>Jang v. A.M. Miller & Assocs.</u>, 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" <u>Ledford v. Sullivan</u>, 105 F.3d 354, 356 (7th Cir. 1997) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)); <u>Jones v. General Elec. Co.</u>, 87 F.3d 209, 211 (7th Cir. 1996). <u>See also Alper v. Altheimer & Gray</u>, 257 F.3d 680, 687 (7th Cir. 2001) (plaintiff "does not have to prove its factual and legal allegations at this stage, it must only show that relief is possible.").

Under the liberal system of notice pleading envisioned by Federal Rule of Civil Procedure 8,

> complaints need not contain elaborate factual recitations. They are supposed to be succinct. . . . Any need to plead facts that, if true, establish each element of a "cause of action" was abolished by the Rules of Civil Procedure in 1938, which to signify the radical change from code pleading also replaced "cause of action" with "claim for relief." One pleads a "claim for relief" by briefly describing the events. At this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.

Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (citations omitted).  As the Seventh Circuit has explained,

> A complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts.  The federal rules require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid.  All that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.

Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (citations omitted).  The federal notice pleading system does not favor dismissals for failure to state a claim.  Gray v. County of Dane, 854 F.2d 179, 182 (7th Cir. 1988).

A plaintiff may style a claim for legal malpractice as either a tort or a contract claim.  Cleveland v. Rotman, 297 F.3d 569, 572 (7th Cir. 2002).  Under either a tort or contract theory, the elements are the same.  Id.  To state a legal malpractice claim under Illinois law, the plaintiff must allege (1) an attorney-client relationship establishing a duty on the attorney's part, (2) breach of that duty, (3) proximate cause establishing that but for the breach the plaintiff would not have been injured, and (4) resulting damages.  Id.

Defendants first argue that IA's amended complaint should be dismissed because it fails to allege facts establishing that defendants' alleged negligence proximately caused IA's claimed

damages. In particular, defendants contend that IA is required to make the following allegations:

> IA must allege what particular rules the PPM violated, what was wrong with the "SEC and State Regulatory Agencies" filings, and how any subsequent "corrections" brought the PPM into compliance. In addition, IA must allege how, but for defendants' conduct, any patent or trademark work would have been successful. Without these essential allegations, the "case within a case" requirement under Illinois law is not met.

Defs.' Memo. at 9. However, the burden that defendants would have IA bear is well beyond that required by federal notice pleading standards. "A Rule 12(b)(6) motion cannot be used to dismiss a complaint on the ground that it does not include information that Rule 8 does not require it to contain." Cook v. Winfrey, 141 F.3d 322, 328 (7th Cir. 1998). At this stage the federal rules require only that the complaint state a claim, not that it plead the facts that if true would establish that the claim was valid. See Higgs, 286 F.3d at 439. IA need only specify the bare minimum facts necessary to put the defendants on notice of its claims so that they can file an answer. See id. IA may also plead conclusions, so long as they provide defendants with at least minimal notice of the claim. See Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995). IA alleges that it "[a]s a direct and proximate result of Defendants' breach of their fiduciary duties, IA incurred several forms of damages[.]" (Amended Compl. ¶ 71). These allegations, combined with the factual allegations set forth in the amended complaint, are sufficient to allege that defendants'

negligence proximately caused IA's claimed damages for the purposes of Rule 8.[1]

For these same reasons defendants' argument that the amended complaint should be dismissed for failure to allege actual damages also fails. IA alleges that it "incurred several forms of damages, including, but not limited to, legal and professional fees from various firms and lost investments opportunities, in an amount to be determined according to proof at trial." (Amended Compl. ¶ 71). Although IA does not allege a monetary value for its damages, it is not required to do so at this stage. See Dalen v. Kubiesa, No. 98 C 2362, 2001 WL 292970, at *4 (N.D. Ill. Mar. 23, 2001). See also Bennett v. Gordon, 282 Ill. App.3d 378, 382, 668 N.E.2d 109, 112 (1st Dist. 1996) ("plaintiff's action is not premature simply because the amount of her damages are [sic] not ascertainable from the complaint. Plaintiff is entitled to develop these facts at trial."). IA's allegations with regard to damages are sufficient to withstand a motion to dismiss.

Defendants next argue that the amended complaint should be dismissed because IA appears to improperly seek, as its own damages, alleged injuries to a shareholder and its affiliates.

---

[1]Defendants rely on Hefferman v. Bass, No. 04 C 5748, 2005 WL 936900 (N.D. Ill.Apr. 15, 2005) and Marro v. Adamski & Conti, No. 97 C 8805, 1998 WL 246397 (Apr. 30, 1998) for the proposition that a malpractice claim that fails to allege facts establishing a causal connection must be dismissed pursuant to Rule 12(b)(6). However, we do not believe these decisions are consistent with Seventh Circuit precedent defining federal notice pleading requirements. See generally Cook v. Winfrey, 141 F.3d 322, 327-28 (7th Cir. 1998).

They contend that "IA is required to clearly state that it is seeking recovery for injuries incurred by IA only. It must also state what those injuries are and how they were caused by defendants' legal services." Defs.' Reply at 7. However, defendants misstate the federal notice pleading requirements for withstanding a motion to dismiss. As discussed above, IA has sufficiently alleged the proximate cause and damages elements of its malpractice claim.

In light of the foregoing, defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied.


**B.    Motion to Dismiss Pursuant to Rules 8(a) and 12(f)**

In the alternative, defendants argue that IA's amended complaint should be dismissed under Rules 8 and 12(f) of the Federal Rules of Civil Procedure, claiming that it is "confusing and convoluted." IA counters that its complaint satisfies Rule 8, and that Rule 12(f) does not apply in this case. We agree with IA.

"Under Rule 8, a complaint 'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.'" Vicom, Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 775 (7th Cir. 1994) (quoting Wade v. Hopper, 993 F.2d 1246, 1249 (7th Cir. 1993)). A complaint that is prolix and/or confusing makes it

difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation. Id. At 775-76.  A district court may dismiss a complaint for failure to comply with the requirement of Rule 8(a)(2) that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 649 n.5 (7th Cir. 1997).

We believe that IA's complaint is sufficiently clear that dismissal pursuant to Rule 8(a)(2) is unwarranted.  Unlike the 119 page complaint in Vicom, IA's 15 page complaint is not overly complex or confusing.  Defendants' motion to dismiss on this basis therefore is denied.

Finally, defendants move to strike the amended complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. They fail to identify any objectionable portions of IA's complaint they contend should be stricken.  Rather, they argue that a complaint may be stricken in its entirety pursuant to Rule 12(f) for failure to comply with Rule 8.  In support of this contention defendants cite Hardin v. American Elec. Power, 188 F.R.D. 509 (S.D. Ind. 1999).  However, defendants misread the plain language of that decision, which was as follows:

> If a complaint fails to meet the requirements of Rule 8,
> we have the power either to dismiss the complaint for
> failing to state a claim upon which relief may be
> granted, see Fed. R. Civ. P. 12(b)(6), or to strike those
> parts that are "redundant, immaterial, impertinent or
> scandalous," Fed. R. Civ. P. 12(f).

Id. at 511 (emphasis added). As IA correctly points out, a motion to strike "is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint[.]" 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380, at 391 (3d ed. 2004). Defendants' motion to strike IA's amended complaint therefore is denied.

## CONCLUSION

Defendants' motion to dismiss plaintiff's first amended complaint is denied.


Date:         September 20, 2006



ENTER:        _____

              John F. Grady, United States District Judge